COLLIER & BASIL P.C.
Robert Basil, Esq.
1270 Broadway, Suite 305
New York, NY 10001
(917) 512-3066
Attorney for Plaintiffs

MOTLEY RICE LLC
Mary Schiavo, Esq.
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
(843) 216-9138
Attorney for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## NEWARK DIVISION

### CASE NO.: 09-CV-06142-DMC-CCC

| | |
|---|---|
| **GINEVRA GALLAZZI**, Individually, and as Administrator ad Prosequendum of the Estate of **FABIO GALLAZZI**, Deceased, | *Consolidated Case*<br>*09-CV-06142-DMC-CCC* |
| **SILVIA RIGAMONTI NORELLI**, Individually, and as Administrator ad Prosequendum of the Estate of **FILIPPO NORELLI**, Deceased, | *Formerly*<br>*09-CV-06143 - DMC-CCC* |
| **GINEVRA GALLAZZI**, Individually, and as Administrator ad Prosequendum of the Estate of **GIACOMO GALLAZZI**, Deceased, | *Formerly*<br>*09-CV-06144-DMC-CCC* |
| **SILVIA RIGAMONTI NORELLI**, Individually, and as Administrator ad Prosequendum of the Estate of **MICHELE NORELLI**, Deceased, | *Formerly*<br>*09-CV-06145-DMC-CCC* |
| **GINEVRA GALLAZZI**, Individually, and as Administrator ad Prosequendum of the Estate of **TIZIANA PEDRONI**, Deceased, | *Formerly*<br>*09-CV-06146-DMC-CCC* |
| Plaintiffs, | |

vs.

**LIBERTY HELICOPTERS, INC.**, a New Jersey corporation; **MERIDIAN CONSULTING I CORPORATION, INC.**, a New Jersey Corporation; **THE ESTATE OF STEVEN M. ALTMAN,** a Pennsylvania Estate; **LCA PARTNERSHIP,** an alleged Pennsylvania Partnership and/or **JOHN DOE PARTNERS** in the alleged **LCA PARTNERSHIP** in their individual capacity, and **THE UNITED STATES OF AMERICA**

Defendants.

## FIRST AMENDED COMPLAINT
## AND JURY DEMAND

COMES NOW Plaintiffs, GINEVRA GALLAZZI, and SILVIA RIGAMONTI NORELLI, as Administrators ad Prosequendum for their causes of action in the above five cases which were consolidated by Order of this Court into this one action, by and through undersigned counsel and for their causes of action file this First Amended Complaint against Defendants:

LIBERTY HELICOPTERS, INC. ("LIBERTY")
P.O. Box 1338
Linden, New Jersey 07036

MERIDIAN CONSULTING I CORPORATION, INC. ("MERIDIAN")
PO Box 1338
Linden, New Jersey 07036

THE ESTATE OF STEVEN A. ALTMAN ("ALTMAN")
c/o Franklin F. Bass
Locke Lord Bissell & Liddell
3 World Financial Center
New York, NY 10281

LCA PARTNERSHIP ("LCA")

240 New York Dr. Suite 1
Ft. Washington, Pennsylvania  19034

UNKNOWN JOHN DOE PARTNERS
IN THE ALLEGED LCA PARTNERSHIP, IN THEIR INDIVIDUAL CAPACITY

THE UNITED STATES OF AMERICA
Eric J. Holder, Jr.
United States Attorney General
U.S. Department of Justice
Washington, DC 20530


Paul J. Fishman
Unites States Attorney for the District of New Jersey
970 Broad Street, 7th Floor
Newark, NJ 07102

and alleges on information and belief:

<u>**JURISDICTION AND VENUE**</u>

1.     This is an action for damages very substantially in excess of both $75,000 and $150,000, exclusive of interest, costs, and attorneys fees.

2.     Jurisdiction exists over this action under 28 U.S.C. § 1332 because the matter in controversy exceeds the sum of $75,000 and exceeds the sum of $150,000 and the controversy is between citizens of the United States and citizens of a foreign state.

3.     This Court has exclusive jurisdiction over these claims against the United States of America pursuant to the Federal Tort Claims Act, 28 U.S.C. §1346(b)(1) and 28 U.S.C. §2671, et seq.  This is a civil action for claims against the United States for money damages for loss of property, personal injury and death caused by the negligent wrongful acts or omissions of employees of the United States Government while acting within the scope of their offices or

employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. The Federal Aviation Administration is an operating administration of the U.S. Department of Transportation. The U.S. Department of Transportation is a Federal agency as used in Title 28 Section 1346(b) and 2401(b).

4. Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to this claim occurred in this judicial district and under 28 U.S.C. §§1402(b) because this is a tort claim against the United States under the subsection (b) of section 1346 of the Title 28 and it may be prosecuted in this judicial district because it is where many of the acts or omissions complained of occurred.

5. Plaintiffs have complied with the administrative prerequisites regarding filing suit against the defendant UNITED STATES in that on November 23, 2009, Plaintiffs served upon the defendant UNITED STATES, Notices of Claim (Standard Form 95) on behalf of Decedents FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI, and their estates, survivors and beneficiaries, each of which were received by an agency of Defendant UNITED STATES, namely, the FEDERAL AVIATION ADMINISTRATION (the "FAA"), on November 24, 2009, and the defendant UNITED STATES, by and through the FAA, issued its denials with respect to the Notices of Claim on February 1, 2010. Accordingly,

all conditions precedent to bringing this action have been met and this action is timely instituted within six (6) months of the denials of the Notices of Claim.

## **PARTIES**

6.    At all times material hereto, Plaintiffs were and are residents of Italy.

7.    At all time material hereto, Decedents FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI died in the Unites States of America while they were lawful tourists in the United States of America.

8.    At all times material hereto, Plaintiff GINEVRA GALLAZZI was duly appointed by the State of New Jersey to serve as the Administrator ad Prosequendum of the Estates of FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, and Plaintiff SILVIA RIGAMONTI NORELLI was duly appointed by the State of New Jersey to serve as the Administrator ad Prosequendum of the Estates of MICHELE NORELLI and FILIPPO NORELLI.

9.    Complaints for each of the five decedents were filed on December 4, 2009, and assigned case numbers 09-CV-06142, 09-CV-06143, 09-CV-06144, 09-CV-06145 and 09-CV-06146.   The five cases, by order of this Court dated January 13, 2010, and were consolidated under the lowest numbered case, 09-CV-06142.

10.    At all times material hereto, Defendant LIBERTY HELICOPTERS, INC., (LIBERTY) was a New Jersey corporation with headquarters at Linden,

5

New Jersey.  LIBERTY was certified as an air carrier pursuant 14 C.F.R § 135 and operated the Eurocopter AS350-BA Helicopter, registration N401LH ("EUROCOPTER"), in which FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO  NORELLI were fare-paying passengers and which collided in mid-air with a fixed-wing aircraft, and thereafter killing all five passengers in the LIBERTY helicopter.

11.    At all times material hereto, Defendant MERIDIAN CONSULTING I CORPORATION, INC., (MERIDIAN) was a Delaware corporation with a registered agent located in West Trenton, New Jersey.  MERIDIAN owned the EUROCOPTER and (as a principal) allowed LIBERTY (as an agent) to operate the EUROCOPTER for the carriage of fare-paying passengers pursuant to 14 C.F.R. § 135.

12.    At all times material hereto, the ESTATE OF STEVEN M. ALTMAN is on information and belief a Pennsylvania estate that holds the assets of Steven M. Altman, deceased (ALTMAN), who was the operator of a Piper PA-32R-300 aircraft, registration N71MC (PIPER), which collided with the LIBERY Helicopter in which FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI were fare-paying passengers.

13.    At all times material hereto, LCA PARTNERSHIP was a name which appears on filings with the Federal Aviation Administration as the owner of the PIPER operated by ALTMAN that collided with the EUROCOPTER

6

operated by LIBERTY.  The identities of the partners of LCA PARTNERSHIP are unknown to Plaintiffs, as there is no record of LCA PARTNERSHIP on file with the State of Pennsylvania.  Plaintiffs have no knowledge of the alleged partners' identities, citizenship, or residency, or whether a partnership is fact exists.  LCA PARTNERSHIP has not filed as any of the recognized Pennsylvania business organizations, including but not limited to: Fictitious Names, Pennsylvania Business Corporation, Pennsylvania Nonprofit Corporation, Foreign Business Corporation, Pennsylvania Limited Partnership, Foreign Limited Partnership, Pennsylvania Limited Liability Company, Foreign Limited Liability Company, Pennsylvania Limited Liability Corporation, Pennsylvania Limited Liability Partnership or Foreign Limited Liability Partnership.  In the absence of proper registration and filings with the State of Pennsylvania, the partners, including de facto and implied partners, are liable to Plaintiffs.  Their identities are unknown but they are sued herein as JOHN DOE PARTNERS, in their individual capacity.

14.    At all times material hereto, the Federal Aviation Administration (FAA) was an operating administration of the United States Department of Transportation which is the federal agency of the United States government charged with ensuring safe air transportation by formulating, enacting, and enforcing safety standards that apply to air operations.

15.     Among the duties of the FAA is to supply, through it employees and/or agents, flight following and monitoring in accordance with the FAA internal procedures set out in FAA Order JO 7110.65, titled Air Traffic Control.

16.     The FAA, through its employees and agents, provided flight following and monitoring during the accident flight.

## ALLEGATIONS COMMON TO ALL COUNTS

17.     This claim is made on behalf of Decedents FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI (hereinafter "DECEDENTS") who were injured as a result of a mid-air collision over the Hudson River on August 8, 2009, and who died after the LIBERTY Helicopter in which they were passengers subsequently plunged into the depths of the Hudson River.

18.     This claim is also made on behalf of all the lawful heirs and beneficiaries of the five DECEDENTS who were killed in the Hudson River on August 8, 2009.

19.     At the time of the accident, the sky was clear and the visibility was ten (10) miles.

20.     At the time of the accident Visual Flight Rules (VFR) were in effect.

21.     The DECEDENTS were fare paying passengers aboard a Eurocopter AS350 BA helicopter, registration N401LH (the "EUROCOPTER") operated by LIBERTY HELICOPTERS, which was conducting a sightseeing tour of the New York City area along the Hudson River.

22. The EUROCOPTER in which the DECEDENTS were passengers, and a fixed wing aircraft, a Piper PA-32 ("PIPER"), registration N71MC operated by MR. STEVEN ALTMAN, collided.

23. The EUROCOPTER departed from the West 30th Street Heliport in New York City, New York, at approximately 11:52 A.M. EDT.

24. The EUROCOPTER pilot did not file a flight plan for the flight.

25. The PIPER departed Teterboro Airport in Trenton, New Jersey, (TEB) at approximately 11:49 A.M. EDT.

26. The PIPER pilot did not file a flight plan for the flight.

27. However, the PIPER pilot contacted the TEB clearance delivery and requested a departure clearance from TEB to Ocean City, New Jersey at an altitude of 3000 feet, and requested VFR flight following for the trip.

28. Pursuant to 14 C.F.R. § 91.131, to operate in the "Class B" airspace in the airspace that surrounds the New York metropolitan area, a pilot must have Air Traffic Control (ATC) clearance to enter the airspace and comply with ATC instructions at all times when operating in the airspace.

29. Because the base of the "Class B" airspace in the busy Hudson River corridor is 1100 feet, the PIPER pilot's requested climb to 3000 feet required coordination between the TEB air traffic controllers and the Newark Liberty International Airport (EWR) controllers

30.    When taxiing for departure from TEB, the TEB local controller (LC) asked the PIPER pilot if he would like to climb straight out, or proceed down the Hudson River.

31.    The PIPER pilot elected to proceed down the Hudson River.

32.    The PIPER departed TEB and the LC assigned the PIPER an altitude of 1100 feet and below, presumably to keep the PIPER below the "Class B" airspace and thus avoiding having to coordinate the higher requested altitude with the EWR controllers.

33.    The TEB LC later cleared the PIPER pilot to join the Hudson River southbound.

34.    At this time, there were several potential traffic conflicts between the PIPER and other traffic along the Hudson River.

35.    The TEB LC never warned the PIPER pilot about these potential conflicts.

36.    At no time did the TEB LC coordinate with the EWR air traffic controllers to coordinate the PIPER pilot's request to climb to 3000 feet.

37.    After the PIPER turned south to follow the Hudson River, the EUROCOPTER and the PIPER were on converging flight paths.

38.    At or about 11:52:19 A.M. the TEB LC instructed the PIPER pilot to contact EWR tower for further clearance.

39.    However, also on or about 11:52:19 A.M. when the TEB LC handed off the PIPER to the EWR control there was a traffic conflict visible on the air

traffic control monitor.  EWR air traffic control saw the potential conflict and asked the TEB air traffic controller to get the PIPER away from the other aircraft.

40.    The TEB and EWR air traffic control monitors are supplied their images from the same air traffic control radar and if the TEB LC had been looking at his monitor, the TEB LC would have seen the same traffic conflict visible to EWR.

41.    The TEB LC either failed to look at his monitor to see the traffic conflict, or saw the traffic conflict and neglected, failed or refused to do anything about it.

42.    The PIPER pilot acknowledged the instruction to contact EWR by repeating back the radio frequency change.

43.    The PIPER pilot read back an erroneous or incomplete frequency to the TEB LC, and the message was garbled and thus partially unintelligible.

44.    The TEB LC never corrected the garbled, erroneous and/or incomplete frequency read-back from the PIPER pilot.

45.    At this time the PIPER was at 1100 feet, heading towards the Hudson River where a right turn would align it with the west shore of the Hudson travelling southbound.

46.    At this time the EUROCOPTER was climbing to 1100 feet and heading for the west shore of the Hudson River to follow it southbound.

47.   Shortly after 11:53 A.M. the PIPER and EUROCOPTER collided, resulting in the crash of both aircraft and the death of nine (9) people, including the DECEDENTS FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI.

48.   At all times relevant to this accident, the TEB tower was authorized to be staffed with five (5) air traffic controllers.

49.   At all times relevant to the accident, there were only two (2) controllers working in the TEB tower cab.

50.   At all times relevant to the accident, two (2) TEB assigned controllers were on break.

51.   At all times relevant to the accident, the manager of the shift had left the TEB premises, informing no one of his whereabouts and was unable to be reached even after the accident by cell phone.

52.   From two (2) minutes after he cleared the PIPER for takeoff, and continuing through the time of the accident, the TEB LC was conducting a conversation unrelated to his air traffic control duties and in derogation of his responsibilities to provide VFR flight following as requested by the PIPER pilot and mandated in FAA Order 7110.65.

53.   At all times relevant to this accident, the shift supervisor was unavailable to provide monitoring and situational awareness in the TEB tower cab, including monitoring of potential traffic conflicts and monitoring and

policing of the unauthorized and non-business related conversations that the TEB LC engaged in during the whole of the accident sequence.

54.    The FAA knew, should have known, or in the exercise of reasonable care, would have known, that the procedures for controlling traffic in the busy Hudson River corridor, were antiquated, ineffective, and bound to result in hazardous conditions for those traversing the corridor.

55.    The FAA knew, should have known, or in the exercise of reasonable care, would have known, that by failing to update and revise the ATC procedures for operating in the Hudson River corridor, it was reasonably foreseeable that persons in aircraft operating in the Hudson River Corridor, including FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI, would face an unreasonable risk of personal injury or death.

56.    Despite the fact that the FAA knew, should have known, or in the exercise of reasonable care, would have known, that the procedures for controlling traffic in the busy Hudson River corridor were antiquated, ineffective, and hazardous, the FAA failed to act to correct such hazards until the death of nine (9) people, including FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI, prompted them to do so.

57.    The FAA failed to timely correct known inadequacies in the procedures for flying the Hudson River corridor and breached their duty to the

DECEDENTS and this breach was the proximate cause of the death of FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI, and caused the damages sustained thereby.

58.     The TEB tower supervisor's behavior was negligent, grossly negligent, reckless and wanton, in that the TEB tower supervisor:

a.)     Intentionally abandoned his duty position when not authorized to do so;

b.)     Abandoned his duty position to conduct personal business on government time;

c.)     Failed to inform other FAA employees of his whereabouts during his absence to perform personal errands;

d.)     Failed to monitor the traffic situation in the TEB vicinity during his absence; and

e.)     Failed to supervise and correct the TEB LC who was on a personal call during the entirety of the accident sequence instead of devoting his time efforts and attention to the air traffic control responsibilities.

59.     The TEB tower supervisor's negligent, grossly negligent, reckless and wanton behavior breached his duty owed to the DECEDENTS and was a substantial contributing factor to and a proximate cause of the death of FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI, and the damages sustained thereby.

60.    The TEB LC's behavior was negligent, grossly negligent, reckless and wanton, in that the TEB LC:

a.)    Due to laziness, inattention or distraction, failed to provide the VFR flight following requested by the PIPER pilot in compliance with the strictures of FAA Order 7110.65;

b.)    Due to laziness, inattention or distraction, failed to provide coordination with the EWR controllers to permit the PIPER pilot operate in the "Class B" airspace as requested;

c.)    Due to laziness, inattention or distraction, failed to timely hand the PIPER pilot off to EWR controllers;

d.)    Due to laziness, inattention or distraction, failed to detect an improper frequency read back by the PIPER pilot during the belated hand off to EWR;

e.)    Due to laziness, inattentiveness or distraction, failed to notice a traffic conflict and/or take any action to resolve it; and

f.)    During the entirety of the accident sequence, engaged in a personal phone call while simultaneously, ineffectively and dangerously acting as the sole controller on watch in the TEB tower, in derogation of his duties to the flying

public, and in particular, those nine (9) who perished that day, including FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI.

61.    The TEB LC's negligent, grossly negligent, reckless and wanton behavior breached his duty to the Decedents and was a substantial contributing factor to and a proximate cause of the death of FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI, and caused the damages sustained thereby.

62.    As a common carrier, LIBERTY was obligated to provide the highest degree of care in the maintenance and operation of the aircraft, a dangerous instrumentality while under its control.  In this respect, LIBERTY owed the highest degree of care to all persons aboard the accident aircraft.

63.    LIBERTY was responsible for the safe and proper maintenance of the aircraft, for the safe and proper operation of the aircraft during its flight, and for the proper training, currency and rest requirements of the flight crew.

64.    LIBERTY breached its duty of care by willfully, wantonly, recklessly, and negligently failing to operate and maintain the subject aircraft in a safe and airworthy manner and this breach was a substantial contributing factor to and a proximate cause of the deaths of FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI and caused the damages sustained thereby.

65.   The pilot of the LIBERTY EUROCOPTER negligently, carelessly, and recklessly failed to adhere to Federal Aviation Regulation (FAR) 14 C.F.R. § 91.113(b), which states, "[w]hen weather conditions permit, regardless of whether an operation is conducted under instrument flight rules or visual flight rules, vigilance shall be maintained by each person operating an aircraft so as to see and avoid other aircraft."

66.   The pilot of the LIBERTY EUROCOPTER negligently, carelessly, and recklessly failed to adhere to Federal Aviation Regulation (FAR) 14 C.F.R. § 91.111(a) which states, "no person may operate an aircraft so close to another aircraft as to create a collision hazard."

67.   FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI, were as at all times material herein, passengers on the accident flight.  The pilot of LIBERTY EUROCOPTER breached his duty to them and they were killed by the willful, wanton, reckless, and negligent misconduct of the pilot of LIBERTY EUROCOPTER and this misconduct was a substantial contributing factor to and a proximate cause of the deaths of FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI and caused the damages sustained thereby.

68.   ALTMAN had a duty to foreseeable third parties, including FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI, to among the other duties listed herein, educate

himself about and to follow the operating procedures for air traffic control in the New York City area Class "B" airspace.

69. Upon information and belief, ALTMAN did not properly follow the procedures for entering and operating in the Hudson River class "B" airspace, in that he failed to monitor the Common Traffic Advisory Frequency (CTAF), and failed to keep a proper lookout for other aircraft.

70. ALTMAN, pilot of the PIPER, negligently, carelessly, and recklessly failed to adhere to Federal Aviation Regulation (FAR) 14 C.F.R. § 91.113(b), which states, "[w]hen weather conditions permit, regardless of whether an operation is conducted under instrument flight rules or visual flight rules, vigilance shall be maintained by each person operating an aircraft so as to see and avoid other aircraft."

71. ALTMAN, pilot of the PIPER, negligently, carelessly, and recklessly failed to adhere to Federal Aviation Regulation (FAR) 14 C.F.R. § 91.111(a) which states, "no person may operate an aircraft so close to another aircraft as to create a collision hazard."

72. ALTMAN, pilot of the PIPER, negligently failed to properly prepare for his flight, including to check, know, notate, program equipment or have on board his plane materials or manuals during his flight to enable him to properly enter the correct frequency for EWR and all other frequencies needed during his flight.

73.   ALTMAN breached his duty to FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI and they were killed by the willful, wanton, reckless and negligent misconduct of ALTMAN, and this misconduct was a substantial contributing factor to and a proximate cause of the deaths of FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI, and caused the damages sustained thereby.

74.   LCA and/or the undisclosed and unknown partners, who are sued herein as JOHN DOE PARTNERS, were the owners of the PIPER, a dangerous instrumentality, and they permitted ALTMAN, a negligent, reckless and careless operator, to fly the PIPER.

75.   LCA and/or JOHN DOE PARTNERS, failed to ensure that ALTMAN operated the PIPER in a safe and prudent manner.

76.   LCA and/or JOHN DOE PARTNERS owed a duty to foreseeable third parties including FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO  NORELLI, LCA and/or JOHN DOE PARTNERS breached that duty to FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI, and they were killed by the willful, wanton, reckless and negligent misconduct of LCA and/or JOHN DOE PARTNERS, and their misconduct was a substantial contributing factor to and a proximate cause of the deaths of FABIO

GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO  NORELLI, and caused the damages sustained thereby.

77.    FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI are without any fault, factual or legal, for any of the negligent acts and omissions, or any of the willful, wanton, reckless and negligent misconduct, set forth herein.

78.    As a result of the aforementioned negligence of the Defendants, and each of them, including LIBERTY HELICOPTERS, MERIDIAN CONSULTING I, INC., THE ESTATE OF STEVEN ALTMAN, LCA PARTNERSHIP and/or JOHN DOE PARTNERS, and the UNITED STATES OF AMERICA'S Federal Aviation Administration and/or by and through its employees, including but not limited to the TEB Tower Supervisor, the TEB air traffic controller on duty, and the FAA employees responsible for managing the design of the air traffic control system in the New York City metropolitan airspace, FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI were killed.  The deaths of the Decedents and their damages were the foreseeable result of the defendant's negligence.  The Defendants' actions and inactions were the factual, legal and proximate causes of the DECEDENTS' deaths and the damages claimed herein.

## COUNT I
## NEGLIGENCE AGAINST LIBERTY AND MERIDIAN

79.    Plaintiffs incorporate by reference all other allegations in this First Amended Complaint as though fully set forth herein.

80. At all times material, MERIDIAN was the owner of the helicopter, a dangerous instrumentality.

81. At all times material, MERIDIAN permitted LIBERTY to operate the helicopter, a dangerous instrumentality.

82. At all times material hereto, MERIDIAN had a duty to ensure that LIBERTY operated the helicopter in a safe and prudent manner.

83. At all times material Defendant LIBERTY owed a duty to all persons aboard the accident helicopter to operate and control the accident helicopter, on the ground and in the air, with the highest degree of care, and to exercise the highest degree of care to prevent injury of any kind, including injury and death as a result of known dangers posed by an improperly operated helicopter.

84. The air crash which occurred on August 8, 2009, and which resulted in the deaths of all on board, was a foreseeable, direct and proximate result of the negligence and willful misconduct alleged herein of Defendants MERIDIAN and LIBERTY.

85. Defendants MERIDIAN and LIBERTY by and through their agents, employees, and representatives, willfully and otherwise breached the duty owed to DECEDENTS in some or all of, but not limited to, the following regards:

      a.) By negligently entrusting the EUROCOPTER, a dangerous instrumentality, to LIBERTY, a negligent operator.

21

b.) By failing to properly train and educate the flight crew on the fundamentals of flight in the Hudson River corridor;

c.) By failing to observe the operative and applicable governmental regulations and directives pertaining to the operation of the subject helicopter;

d.) By failing to operate the aircraft in a safe and competent manner, thereby resulting in the crash in question;

e.) By failing to use all possible means, such as TCAS, anti-collision lights, requiring onboard safety observers or any other means to make sure that the accident helicopter could see and be seen;

f.) By failing to use all available resources to insure the accident helicopter would remain clear of other aircraft;

g.) By failing to follow Federal Aviation Regulations regarding pilot responsibilities to see and avoid other aircraft; and

h.) By allowing the helicopter to collide with the aircraft, killing all aboard.

WHEREFORE, as a foreseeable, direct and proximate result of the acts and/or omissions, of the Defendants, jointly and severally, Plaintiffs hereby demand judgment against LIBERTY and MERIDIAN for:

a) All economic and non economic damages allowed by law;

b)      a measurable and significant period before and after the first and subsequent impacts as well as before the deaths of FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI during which FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI sustained significant personal injuries, including conscious and physical pain and suffering, pre and post impact fright and terror, fear of impending death, mental anguish, emotional distress, and other severe injuries, suffering, distress and harm for a measurable period of time prior to their deaths;

c)      mental and physical pain and suffering of the families and beneficiaries of FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI;

d)      loss of consortium, society and love;

e)      loss of companionship, guidance, care, comfort and advice;

f)      loss of being allowed to live their lives and the enjoyment of their lives of FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI;

g)     loss of enjoyment of life of the their surviving families and beneficiaries;

h)     loss of the value of living one's life and the value of life's pleasures;

i)     loss of the value of not having to live one's life alone;

j)     loss of the value of entire family and the loss of a spouse and minor child;

k)     loss of income;

l)     loss of support in money or kind;

m)     loss of services in money or in kind;

n)     loss of gross earning power and earning capacity;

o)     loss of past earnings;

p)     loss of future and prospective earnings;

q)     loss of inheritance;

r)     full pecuniary loss of FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI;

s)     loss of prospective estate accumulations;

t)     grief, emotional distress, sorrow of the families and beneficiaries;

u)     funeral expenses, memorials and other expenses due to the deaths of FABIO GALLAZZI, GIACOMO GALLAZZI,

TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI;

v)   prejudgment interest;

w)   costs and attorneys fees; and

x)   any all other damages to which FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI, and their representatives, estates, survivors and beneficiaries are lawfully entitled.

**COUNT II**
**WILLFUL AND WANTON MISCONDUCT**
**AGAINST LIBERTY AND MERIDIAN**

86.   Plaintiffs incorporate by reference all other allegations in this First Amended Complaint as though fully set forth herein.

87.   The crash and consequent deaths of FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI was the foreseeable, direct and proximate result of the willful, wanton, reckless, and/or grossly negligent misconduct of Defendants MERIDIAN and LIBERTY in failing and refusing to protect those persons aboard the accident helicopter from known dangers of an extraordinary nature, posed by the unsafe aircraft operations as follows:

a.) By negligently entrusting the EUROCOPTER, a dangerous instrumentality, to LIBERTY, a negligent operator;

b.) By failing to properly train and educate the flight crew on the fundamentals of flight in the Hudson River corridor;

c.) By failing to observe the operative and applicable governmental regulations and directives pertaining to the operation of the subject helicopter;

d.) By failing to operate the aircraft in a safe and competent manner, thereby resulting in the crash in question;

e.) By failing to use all possible means, such as TCAS, anti-collision lights, extra crewmembers or any other means to make sure that the accident helicopter could see and be seen;

f.) By failing to use all available resources to insure the accident helicopter would remain clear of other aircraft;

g.) By failing to follow Federal Aviation Regulations regarding pilot responsibilities to see and avoid other aircraft; and

h.) By allowing the helicopter to collide with the aircraft, killing all aboard.

88.     The crash of the above-described flight on August 8, 2009, was caused by such known and reasonably foreseeable conditions.

89.     By reason of the above-stated acts of wanton, willful, reckless, and/or grossly-negligent conduct, evidencing willful and reckless indifference to the safety, welfare, health, security, and well-being of their passengers, including FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI, in the face of known and notorious risks, LIBERTY and MERIDIAN are liable to the Plaintiffs for exemplary damages.

## COUNT III
## WRONGFUL DEATH AGAINST LIBERTY AND MERIDIAN

90.     Plaintiffs incorporate by reference all other allegations in this First Amended Complaint as though fully set forth herein.

91.     At all times material, LIBERTY and MERIDIAN owed a duty to all persons aboard the accident aircraft to operate and control the subject helicopter, on the ground and in the air, with the highest degree of care, and to exercise the highest degree of care to prevent injury of any kind, including injury and death as a result of known dangers.

92.     The air crash which occurred on August 8, 2009, and which resulted in the deaths of all on board, was a foreseeable, direct and proximate result of the negligence and willful misconduct hereinafter alleged of LIBERTY and MERIDIAN.

93.    LIBERTY and MERIDIAN, by and through their agents, employees, and representatives, willfully and otherwise breached the duty owed to Plaintiffs' DECEDENTS in some or all of, but not limited to, the following regards:

a.)    By negligently entrusting the EUROCOPTER, a dangerous instrumentality, to LIBERTY, a negligent operator;

b.)    By failing to properly train and educate the flight crew on the fundamentals of flight in the Hudson River corridor;

c.)    By failing to observe the operative and applicable governmental regulations and directives pertaining to the operation of the subject helicopter;

d.)    By failing to operate the aircraft in a safe and competent manner, thereby resulting in the crash in question;

e.)    By failing to use all possible means, such as TCAS, anti-collision lights, extra crewmembers or any other means to make sure that the accident helicopter could see and be seen;

f.)    By failing to use all available resources to insure the accident helicopter would remain clear of other aircraft;

g.) By failing to follow Federal Aviation Regulations regarding pilot responsibilities to see and avoid other aircraft; and

h.) By allowing the helicopter to collide with the aircraft, killing all aboard.

WHEREFORE, as a direct and proximate result of the acts and/or omissions, of the Defendants, jointly and severally, Plaintiffs hereby demand judgment against LIBERTY and MERIDIAN for:

a) All economic and non economic damages allowed by law;

b) a measurable and significant period before and after the first and subsequent impacts as well as before the deaths of FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI during which FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI sustained significant personal injuries, including conscious and physical pain and suffering, pre and post impact fright and terror, fear of impending death, mental anguish, emotional distress, and other severe injuries, suffering, distress and harm for a measurable period of time prior to their deaths;

29

c)   mental and physical pain and suffering of the families and beneficiaries of FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI;

d)   loss of consortium, society and love;

e)   loss of companionship, guidance, care, comfort and advice;

f)   loss of being allowed to live their lives and the enjoyment of their lives of FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI;

g)   loss of enjoyment of life of the their surviving families and beneficiaries;

h)   loss of the value of living one's life and the value of life's pleasures;

i)   loss of the value of not having to live one's life alone;

j)   loss of the value of entire family and the loss of a spouse and minor child;

k)   loss of income;

l)   loss of support in money or kind;

m)   loss of services in money or in kind;

n)   loss of gross earning power and earning capacity;

o)   loss of past earnings;

p)   loss of future and prospective earnings;

q)   loss of inheritance;

r)   full pecuniary loss of FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI;

s)   loss of prospective estate accumulations;

t)   grief, emotional distress, sorrow of the families and beneficiaries;

u)   funeral expenses, memorials and other expenses due to the deaths of FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI;

v)   prejudgment interest;

w)   costs and attorneys fees; and

x)   any all other damages to which FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI, and their representatives, estates, survivors and beneficiaries are lawfully entitled.

## COUNT IV
## NEGLIGENCE AGAINST THE ALTMAN ESTATE,
## THE LCA PARTNERSHIP AND/OR JOHN DOE PARTNERS

94.    Plaintiffs incorporate by reference all other allegations in this First Amended Complaint as though fully set forth herein.

95.    At all times material ALTMAN owed a duty to foreseeable third parties, including all persons aboard the accident helicopter, to operate and control the PIPER, on the ground and in the air, with the highest degree of care, and to exercise the highest degree of care to prevent injury of any kind, including injury and death as a result of known dangers posed by the improperly operated PIPER.

96.    At all times material, LCA PARTNERSHIP and/or JOHN DOE PARTNERS were the owners of the PIPER, a dangerous instrumentality.

97.    At all times material, LCA PARTNERSHIP and/or JOHN DOE PARTNERS permitted ALTMAN to operate the PIPER, a dangerous instrumentality.

98.    At all times material hereto, LCA PARTNERSHIP and/or JOHN DOE PARTNERS, had a duty to ensure that ALTMAN operated the PIPER in a safe and prudent manner.

99.    The air crash which occurred on August 8, 2009, and which resulted in the deaths of all on board the PIPER and the EUROCOPTER, was a foreseeable, direct and proximate result of the negligence and willful misconduct alleged herein of ALTMAN.

100. ALTMAN and LCA PARTNERSHIP and/or JOHN DOE PARTNERS, by and through their agents, employees, and representatives, willfully and otherwise breached the duty owed to FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI in some or all of, but not limited to, the following regards:

    a.)    Negligently entrusting the PIPER, a dangerous instrumentality, to a negligent pilot, ALTMAN;

    b.)    By failing to properly train and educate ALTMAN on the fundamentals of flight in the Hudson River corridor;

    c.)    By failing to observe the operative and applicable governmental regulations and directives pertaining to the operation of the subject PIPER;

    d.)    By failing to operate the aircraft in a safe and competent manner, thereby resulting in the crash in question;

    e.)    By failing to use all possible means, such as TCAS, anti-collision lights, monitoring and reporting on the CTAF, monitoring the ATC transmissions or any other means to make sure that the accident aircraft could see and be seen;

    f.)    By failing to use all available resources to insure the accident aircraft would remain clear of other aircraft; and

g.) By allowing the aircraft to collide with the helicopter, killing all aboard.

WHEREFORE, Plaintiffs hereby demand judgment against the Defendants, ALTMAN, and LCA PARTNERSHIP and/or JOHN DOE PARTNERS for:

a) All economic and non economic damages allowed by law;

b) a measurable and significant period before and after the first and subsequent impacts as well as before the deaths of FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI during which FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI sustained significant personal injuries, including conscious and physical pain and suffering, pre and post impact fright and terror, fear of impending death, mental anguish, emotional distress, and other severe injuries, suffering, distress and harm for a measurable period of time prior to their deaths;

c) mental and physical pain and suffering of the families and beneficiaries of FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI;

d) loss of consortium, society and love;

e)      loss of companionship, guidance, care, comfort and advice;

f)      loss of being allowed to live their lives and the enjoyment of their lives of FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI;

g)      loss of enjoyment of life of the their surviving families and beneficiaries;

h)      loss of the value of living one's life and the value of life's pleasures;

i)      loss of the value of not having to live one's life alone;

j)      loss of the value of entire family and the loss of a spouse and minor child;

k)      loss of income;

l)      loss of support in money or kind;

m)      loss of services in money or in kind;

n)      loss of gross earning power and earning capacity;

o)      loss of past earnings;

p)      loss of future and prospective earnings;

q)      loss of inheritance;

r)      full pecuniary loss of FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI;

s)    loss of prospective estate accumulations;

t)    grief, emotional distress, sorrow of the families and beneficiaries;

u)    funeral expenses, memorials and other expenses due to the deaths of FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI;

v)    prejudgment interest;

w)    costs and attorneys fees; and

x)    any all other damages to which FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI, and their representatives, estates, survivors and beneficiaries are lawfully entitled.

### COUNT V
### WILLFUL AND WANTON MISCONDUCT
### AGAINST THE ALTMAN ESTATE, LCA PARTNERSHIP
### AND/OR JOHN DOE PARTNERS

101.  Plaintiffs incorporate by reference all other allegations in this First Amended Complaint as though fully set forth herein.

102.  The crash and consequent deaths of FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI was the foreseeable direct and proximate result of the willful, wanton, reckless, and/or grossly negligent misconduct of Defendants ALTMAN, and LCA

36

PARTNERSHIP and/or JOHN DOE PARTNERS in failing and refusing to protect those persons aboard the accident helicopter from known dangers of an extraordinary nature, posed by the unsafe aircraft operations as follows:

    a.)    Negligently entrusting the PIPER, a dangerous instrumentality, to a negligent pilot, ALTMAN;

    b.)    By failing to properly train and educate ALTMAN on the fundamentals of flight in the Hudson River corridor;

    c.)    By failing to observe the operative and applicable governmental regulations and directives pertaining to the operation of the subject PIPER;

    d.)    By failing to operate the aircraft in a safe and competent manner, thereby resulting in the crash in question;

    e.)    By failing to use all possible means, such as TCAS, anti-collision lights, monitoring and reporting on the CTAF, monitoring the ATC transmissions or any other means to make sure that the accident aircraft could see and be seen;

    f.)    By failing to use all available resources to insure the accident aircraft would remain clear of other aircraft; and

    g.)    By allowing the aircraft to collide with the helicopter, killing all aboard.

103.   The crash of the above-described flight on August 8, 2009, was caused by such known and reasonably foreseeable conditions.

104.   By reason of the above-stated acts of wanton, willful, reckless, and/or grossly-negligent conduct, evidencing willful and reckless indifference to the safety, welfare, health, security, and well-being of their passengers, and the passengers on the EUROCOPTER, including, FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI in the face of known and notorious risks, the Defendants ALTMAN, LCA PARTNERSHIP and/or JOHN DOE PARTNERS, are liable to the Plaintiff for exemplary damages.

## COUNT VI
## WRONGFUL DEATH AGAINST THE ALTMAN ESTATE, LCA PARTNERSHIP AND/OR JOHN DOE PARTNERS

105.   Plaintiffs incorporate by reference all other allegations in this First Amended Complaint as though fully set forth herein.

106.   At all times material, Defendants ALTMAN, LCA PARTNERSHIP and/or JOHN DOE PARTNERS, owed a duty to all persons aboard the accident helicopter to operate and control the PIPER, on the ground and in the air, with the highest degree of care, and to exercise the highest degree of care to prevent injury of any kind, including injury and death as a result of known dangers.

107.   The air crash which occurred on August 8, 2009, and which resulted in the deaths of all on board, was a foreseeable direct and proximate result of the

negligence and willful misconduct hereinafter alleged of Defendants ALTMAN, LCA PARTNERSHIP and/or JOHN DOE PARTNERS.

108.   Defendants ALTMAN and LCA PARTNERSHIP and/or JOHN DOE PARTNERS, by and through their agents, employees, and representatives, willfully and otherwise breached the duty owed to FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI in some or all of, but not limited to, the following regards:

a.)   Negligently entrusting the PIPER, a dangerous instrumentality, to a negligent pilot, ALTMAN;

b.)   By failing to properly train and educate ALTMAN on the fundamentals of flight in the Hudson River corridor;

c.)   By failing to observe the operative and applicable governmental regulations and directives pertaining to the operation of the subject PIPER;

d.)   By failing to operate the aircraft in a safe and competent manner, thereby resulting in the crash in question;

e.)   By failing to use all possible means, such as TCAS, anti-collision lights, monitoring and reporting on the CTAF, monitoring the ATC transmissions or any other means to make sure that the accident aircraft could see and be seen;

f.)   By failing to use all available resources to insure the accident aircraft would remain clear of other aircraft;  and

g.)   By allowing the aircraft to collide with the helicopter, killing all aboard.

WHEREFORE, Plaintiffs hereby demand judgment against the Defendants, ALTMAN, LCA PARTNERSHIP and/or JOHN DOE PARTNERS for:

a)   All economic and non economic damages allowed by law;

b)   a measurable and significant period before and after the first and subsequent impacts as well as before the deaths of FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI during which FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI sustained significant personal injuries, including conscious and physical pain and suffering, pre and post impact fright and terror, fear of impending death, mental anguish, emotional distress, and other severe injuries, suffering, distress and harm for a measurable period of time prior to their deaths;

c)   mental and physical pain and suffering of the families and beneficiaries of FABIO GALLAZZI, GIACOMO

40

GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI;

d)      loss of consortium, society and love;

e)      loss of companionship, guidance, care, comfort and advice;

f)      loss of being allowed to live their lives and the enjoyment of their lives of FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI;

g)      loss of enjoyment of life of the their surviving families and beneficiaries;

h)      loss of the value of living one's life and the value of life's pleasures;

i)      loss of the value of not having to live one's life alone;

j)      loss of the value of entire family and the loss of a spouse and minor child;

k)      loss of income;

l)      loss of support in money or kind;

m)      loss of services in money or in kind;

n)      loss of gross earning power and earning capacity;

o)      loss of past earnings;

p)      loss of future and prospective earnings;

q)      loss of inheritance;

r)     full pecuniary loss of FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI;

s)     loss of prospective estate accumulations;

t)     grief, emotional distress, sorrow of the families and beneficiaries;

u)     funeral expenses, memorials and other expenses due to the deaths of FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI;

v)     prejudgment interest;

w)    costs and attorneys fees; and

**x)**    any all other damages to which FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI, and their representatives, estates, survivors and beneficiaries are lawfully entitled.

## COUNT VII
## NEGLIGENCE AGAINST THE UNITED STATES OF AMERICA
## (FEDERAL AVIATION ADMINISTRATION)

109.    Plaintiffs incorporate by reference all other allegations in this First Amended Complaint as though fully set forth herein.

110.    At all times relevant to this accident, the TEB tower was

authorized to be staffed with five air traffic controllers.

111.   At all times relevant to the accident, there were only two controllers working in the TEB tower cab.

112.   At all times relevant to the accident, two TEB assigned controllers were on break.

113.   At all times relevant to the accident, the manager of the shift had left the TEB premises, informing no one of his whereabouts and was unable to be reached even after the accident by cell phone.

114.   From two minutes after he cleared the PIPER for takeoff, and continuing through the time of the accident, the TEB LC was conducting a conversation unrelated to his air traffic control duties and in derogation of his responsibilities to provide VFR flight following as requested by the PIPER pilot and mandated in FAA Order 7110.65.

115.   At all times relevant to this accident, the shift supervisor was unavailable to provide monitoring and situational awareness in the TEB tower cab, including monitoring of potential traffic conflicts and monitoring and policing of the unauthorized and non-business related conversations that the TEB LC engaged in during the whole of the accident sequence.

116.   The FAA knew, should have known, or in the exercise of reasonable care, would have known, that the procedures for controlling traffic in the busy Hudson River corridor, were antiquated, ineffective, and bound to result in hazardous conditions for those traversing the corridor.

117.   The FAA knew, should have known, or in the exercise of reasonable care, would have known, that by failing to update and revise the ATC procedures for operating in the Hudson River corridor, it was reasonably foreseeable that persons in aircraft operating in the Hudson River Corridor, including FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI would face an unreasonable risk of personal injury or death.

118.   Despite the fact that the FAA knew, should have known, or in the exercise of reasonable care, would have known, that the procedures for controlling traffic in the busy Hudson River corridor were antiquated, ineffective, and hazardous, the FAA failed to act to correct such hazards until the death of nine people, including the DECEDENTS, prompted them to do so.

119.   The failure of the FAA to timely correct known inadequacies in the procedures for flying the Hudson River corridor was the foreseeable, direct and proximate cause of the death of the DECEDENTS and the damages sustained thereby.

120.   The TEB tower supervisor's behavior was negligent, grossly negligent, reckless and wanton, in that the TEB tower supervisor:

    a.)   Intentionally abandoned his duty position when not authorized to do so;

    b.)   Abandoned his duty position to conduct personal business on government time;

c.)  Failed to inform other FAA employees of his whereabouts during his absence to perform personal errands;

d.)  Failed to monitor the traffic situation in the TEB vicinity during his absence;

e.)  Failed to supervise and correct the TEB LC who was on a personal call during the entirety of the accident sequence instead of devoting his time efforts and attention to the air traffic control responsibilities; and

f.)  Violating numerous sections of the Air Traffic Control Procedures Manual, in effect on August 8, 2009 (the "ATC Manual"), including but not limited to, those sections and paragraphs of the ATC Manual, concerning the duty to provide required traffic advisories to the pilot of the subject PIPER aircraft concerning potential other traffic conflicts, as well as the requirement of attention to duty as opposed to being distracted by a personal telephone call which was a flagrant violation of the duties and responsibilities of an on-duty air traffic controller who is providing air traffic control services to aircraft;

121.  Said failures and violations of the ATC Manual, as well as the flagrant inattention to duty was the foreseeable, direct and proximate cause, in whole or in part, the mid-air collision and the injuries to and deaths of FABIO

GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI.

122.   The TEB tower supervisor's negligent, grossly negligent, reckless and wanton behavior was a substantial contributing factor to and a foreseeable, direct and proximate cause of the death of the DECEDENTS and the damages sustained thereby.

123.   The TEB LC's behavior was negligent, grossly negligent, reckless and wanton, in that the TEB LC:

    a.)    Due to laziness, inattention or distraction, failed to provide the VFR flight following requested by the PIPER pilot in compliance with the strictures of FAA Order 7110.65 ;

    b.)    Due to laziness, inattention or distraction, failed to provide coordination with the EWR controllers to permit the PIPER pilot operate in the "Class B" airspace as requested;

    c.)    Due to laziness, inattention or distraction, failed to timely hand the PIPER pilot off to EWR controllers;

    d.)    Due to laziness, inattention or distraction, failed to detect an improper frequency read back by the PIPER pilot during the belated hand off to EWR; and

    e.)    During the entirety of the accident sequence, carried on a

personal telephone call while simultaneously and ineffectively acting as the sole controller on watch in the TEB tower, in derogation of his duties to the flying public, and in particular, those nine who perished that day, including the DECEDENTS.

WHEREFORE, Plaintiffs hereby demand judgment against the Defendants, ALTMAN, LCA PARTNERSHIP and/or JOHN DOE PARTNERS for:

a)   All economic and non economic damages allowed by law;

b)   a measurable and significant period before and after the first and subsequent impacts as well as before the deaths of FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI during which FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI sustained significant personal injuries, including conscious and physical pain and suffering, pre and post impact fright and terror, fear of impending death, mental anguish, emotional distress, and other severe injuries, suffering, distress and harm for a measurable period of time prior to their deaths;

c)   mental and physical pain and suffering of the families and beneficiaries of FABIO GALLAZZI, GIACOMO

GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI;

d)   loss of consortium, society and love;

e)   loss of companionship, guidance, care, comfort and advice;

f)   loss of being allowed to live their lives and the enjoyment of their lives of FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI;

g)   loss of enjoyment of life of the their surviving families and beneficiaries;

h)   loss of the value of living one's life and the value of life's pleasures;

i)   loss of the value of not having to live one's life alone;

j)   loss of the value of entire family and the loss of a spouse and minor child;

k)   loss of income;

l)   loss of support in money or kind;

m)   loss of services in money or in kind;

n)   loss of gross earning power and earning capacity;

o)   loss of past earnings;

p)   loss of future and prospective earnings;

q)   loss of inheritance;

r)    full pecuniary loss of FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI;

s)    loss of prospective estate accumulations;

t)    grief, emotional distress, sorrow of the families and beneficiaries;

u)    funeral expenses, memorials and other expenses due to the deaths of FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI;

v)    prejudgment interest;

w)    costs and attorneys fees; and

x)    any all other damages to which FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI, and their representatives, estates, survivors and beneficiaries are lawfully entitled.

## COUNT VIII
### *RES IPSA LOQUITOR* AGAINST MERIDIAN, LIBERTY, THE ALTMAN ESTATE, LCA PARTNERSHIP AND/OR JOHN DOE PARTNERS AND THE UNITED STATES OF AMERICA

124.   Plaintiffs incorporate by reference all other allegations in this First Amended Complaint as though fully set forth herein.

125.  FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI were fare-paying passengers on a helicopter for hire for the purpose of a sight-seeing tour of New York City.

126.  The EUROCOPTER collided with a fixed wing PIPER and crashed, killing FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI.

127.  FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI were factually and legally without fault in the accident.

128.  Absent the negligence of one or all of the Defendants, such a mid-air collision would not occur.

129.  The EUROCOPTER was under the exclusive control and management of LIBERTY and MERIDIAN.

130.  The PIPER was under the exclusive control and management of ALTMAN, LCA PARTNERSHIP and/or JOHN DOE PARTNERS.

131.  Air traffic control and aircraft separation were under the exclusive control and management of the UNITED STATES OF AMERICA'S Federal Aviation Administration.

132.  Negligence of all of the Defendants can be inferred by the collision, because an accident such as this does not normally occur without negligence, and because the Defendants exercised exclusive control and management over the dangerous instrumentalities that caused the collision.

133.   The horrific crash of the aircraft and the deaths of FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI is a *res ipsa loquitur* demonstration of negligence.

WHEREFORE, Plaintiffs hereby demand judgment against the defendants LIBERTY, MERIDIAN, ALTMAN, LCA PARTNERSHIP and/or JOHN DOE PARTNERS, and the UNITED STATES OF AMERICA for:

a)   All economic and non economic damages allowed by law;

b)   a measurable and significant period before and after the first and subsequent impacts as well as before the deaths of FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI during which FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI sustained significant personal injuries, including conscious and physical pain and suffering, pre and post impact fright and terror, fear of impending death, mental anguish, emotional distress, and other severe injuries, suffering, distress and harm for a measurable period of time prior to their deaths;

c)   mental and physical pain and suffering of the families and beneficiaries of FABIO GALLAZZI, GIACOMO

GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI;

d)     loss of consortium, society and love;

e)     loss of companionship, guidance, care, comfort and advice;

f)     loss of being allowed to live their lives and the enjoyment of their lives of FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI;

g)     loss of enjoyment of life of the their surviving families and beneficiaries;

h)     loss of the value of living one's life and the value of life's pleasures;

i)     loss of the value of not having to live one's life alone;

j)     loss of the value of entire family and the loss of a spouse and minor child;

k)     loss of income;

l)     loss of support in money or kind;

m)     loss of services in money or in kind;

n)     loss of gross earning power and earning capacity;

o)     loss of past earnings;

p)     loss of future and prospective earnings;

q)     loss of inheritance;

r)    full pecuniary loss of FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI;

s)    loss of prospective estate accumulations;

t)    grief, emotional distress, sorrow of the families and beneficiaries;

u)    funeral expenses, memorials and other expenses due to the deaths of FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI;

v)    prejudgment interest;

w)    costs and attorneys fees; and

x)    any all other damages to which FABIO GALLAZZI, GIACOMO GALLAZZI, TIZIANA PEDRONI, MICHELE NORELLI and FILIPPO NORELLI, and their representatives, estates, survivors and beneficiaries are lawfully entitled.

**WHEREFORE**, Plaintiffs demand judgment against all Defendants, and each of them, jointly and severally, as hereinafter set forth:

a.)    For all compensatory and economic damages, as allowed by law for wrongful death and survival damages, and for all non-economic damages as allowed by law for suffering

of the above-named decedents, their estates, beneficiaries and next-of-kin in an amount according to proof at trial;

b.)   For property damage, loss of use of property and estate damages according to proof;

c.)   For exemplary damages as allowed by law;

d.)   For pre-judgment interest as provided by law;

e.)   For costs of suit incurred herein;

f.)   For attorneys fees as allowed by law;

g.)   That all issues of fact in this matter be determined by a jury; and

h.)   For such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs hereby demand trial by jury on all issues so triable.  Furthermore, as against the UNITED STATES OF AMERICA, if trial by jury is not permitted, then an advisory jury is requested.

Respectfully submitted,

**COLLIER & BASIL P.C.**

By:   s/ Robert Basil
Robert Basil, Esq.
1270 Broadway
Suite 305
New York, NY 10001
Telephone:   (917) 512-3066
robertjbasil@collierbasil.com

54

**MOTLEY RICE LLC**

By:    s/ Mary Schiavo
        Mary Schiavo, Esq. (*Pro Hac Vice*)
        28 Bridgeside Blvd.
        P.O. Box 1792 (29465)
        Mount Pleasant, SC 29464
        Telephone    (843) 216-9138
        Facsimile    (843) 216-9440
        mschiavo@motleyrice.com

DATED:    February 17, 2010

## SERVICE LIST

| | |
|---|---|
| Arthur Alan Wolk, Esq.<br>THE WOLK LAW FIRM<br>1710-12 Locust Street<br>Philadelphia, PA  19103<br>Tel:  (215) 545-4220<br>Fax:  (215)-545-5252<br>airlaw@airlaw.com<br><br>**Attorneys for The Estate<br>of Steven M. Altman** | Daniel R. Lindemann, Esq.<br>LINDEMANN, LLC<br>VIP Office Centre<br>41 Vreeland Avenue<br>Totowa, NJ  07512<br>Tel:  (973)  256-1222<br>Fax:  (973) 256-4228<br>drl@lindemann-lw.com<br><br><br>Franklin F. Bass, Esq.<br>LOCKE LORD BISSELL & LIDDELL<br>3 World Financial Center<br>New York, NY 10281<br>FBass@lockelord.com<br><br>**Attorneys for LCA Partnership and<br>Estate of Steven M. Altman** |
| Douglas H. Amster, Esq.<br>LECLAIR RYAN<br>1 Riverfront Plaza<br>1037 Raymond Blvd., 16th Floor<br>Newark, NJ  07102<br>Tel:  (973) 491-3372<br>Fax:  (973) 491-3555<br>Douglas.amster@leclairryan.com<br><br>**Attorneys for Liberty Helicopters and<br>Meridian Consulting I, Inc.** | |