IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
NEWARK DIVISION

CASE NO. 09-CV-06142-DMC-CCC

| | |
|---|---|
| *In Re Hudson River Mid-Air Collision on August 8, 2009* | *Consolidated for Discovery Purposes Only* |
| **FILED IN THE BELOW MATTER:** | |
| GINEVRA GALLAZZI, Individually, and as Administrator ad Prosequendum of the Estate of **FABIO GALLAZZI,** Deceased, | **Consolidated Case** |
| **SILVIA RIGAMONTI NORELLI,** Individually, and as Administrator ad Prosequendum of the Estate of **FILIPPO NORELLI,** Deceased, | **Formerly 09-CV-06143 - DMC-CCC** |
| **GINERVA GALLAZZI,** Individually, and as Administrator ad Prosequendum of the Estate of **GIACOMO GALLAZZI,** Deceased, | **Formerly 09-CV-06144-DMC-CCC** |
| **SILVIA RIGAMONTI NORELLI,** Individually, and as Administrator ad Prosequendum of the Estate of **MICHELE NORELLI,** Deceased, | **Formerly 09-CV-06145-DMC-CCC** |
| **GINERVA GALLAZZI,** Individually, and as Administrator ad Prosequendum of the Estate of **TIZIANA PEDRONI,** Deceased, | **Formerly 09-CV-06146-DMC-CCC** |
| Plaintiffs, vs. | |
| **LIBERTY HELICOPTERS, INC.,** a New Jersey corporation; **MERIDIAN CONSULTING I CORPORATION, INC.,** a New Jersey Corporation; **PAMELA ALTMAN,** as Executor of the **ESTATE OF STEVEN M. ALTMAN,** a Pennsylvania Estate; **LCA PARTNERSHIP,** an alleged Pennsylvania Partnership, **LCA PARTNERSHIP,** an alleged Pennsylvania Partnership, **DAVID H. ALTMAN,** Individually, and as General Partner of **LCA PARTNERSHIP,** | |

DA AERO, INC., THE UNITED STATES OF AMERICA, ALTMAN MANAGEMENT, INC., a Delaware Corporation; and **ALTMAN MANAGEMENT COMPANY II, INC.**, a Delaware Corporation,

                         Defendants.

**REPLY BRIEF IN FURTHER SUPPORT OF LIBERTY HELICOPTERS, INC.'S AND MERIDIAN CONSULTING I CORPORATION, INC.'S MOTION TO DISMISS ADMIRALTY AND MARITIME CLAIMS ALLEGED IN SECOND AMENDED COMPLAINT**

LECLAIRRYAN
A Virginia Professional Corporation
One Riverfront Plaza – 16th Floor
1037 Raymond Boulevard
Newark, New Jersey 07102
Tel.: (973) 491-3600
Attorneys for Defendants
Liberty Helicopters, Inc. and
Meridian Consulting I Corporation, Inc.

Of Counsel:
   Peter B. Van Deventer, Jr., Esq.
   Douglas H. Amster, Esq.

and on the Brief:
   Peter B. Van Deventer, Jr., Esq.
   Douglas H. Amster, Esq.
   Lili Beneda, Esq.

6308323-1

# TABLE OF CONTENTS

**PAGE**

I.  PRELIMINARY STATEMENT .................................................................................. 1

II. LEGAL ARGUMENT ................................................................................................ 3

A. MARITIME JURISDICTION DOES NOT EXIST OVER ANY TORT OCCURRING OVER NAVIGABLE WATERS - AND WHERE CONGRESS SEEKS TO CONVEY JURISDICTION IT LEGISLATES SO .................................................................. 3

B. THIS CASE BEARS NO CONNECTIONS TO TRADITIONAL MARITIME ACTIVITIES .................................................................................. 6

CONCLUSION .................................................................................................................. 8

# TABLE OF AUTHORITIES

## FEDERAL CASES

Atlantic Mutual Insurance Cp v. Balfour Maclaine International Ltd.,
    968 F.2d 196 (2d Cir. 1992)..................................................................................1

Calhoun v. Yamaha Motor Co.,
    216 F.3d 338 (3d Cir. 2000)..................................................................................6

Eberli v. Cirrus Design Corp.,
    15 F. Supp. 2d 1369 (S.D. Tex 2000) ...................................................................4

Executive Jet Aviation, Inc. v. City of Cleveland,
    409 U.S. 249 (1972).....................................................................................1, 5, 7

Foremost Insurance Co. Richardson,
    457 U.S. 668 (1982).........................................................................................3, 6

Grubart v. Great Lakes Dredge & Deck Co..,
    513 U.S. 527 (1995)..............................................................................................6

In re Air Crash Disaster Near Peggy's Cove, Nova Scotia on Sept. 2, 1998,
    210 F. Supp. 2d 570 (E.D. Pa 2002) .................................................................4, 5

Ohntrup v. Gallagher,
    03-cv-2006, U.S. Dist. LEXIS 70566 (D.N.J. Sept. 27, 2006)..........................1, 2

Sisson v. Ruby,
    497 U.S. 358 (1990)......................................................................................3, 6, 7

Slavchev v. Royal Caribbean Cruises, Ltd.,
    559 F.3d 251 (4th Cir. 2009) .................................................................................2

## FEDERAL STATUTES

46 U.S.C. §30307.........................................................................................................2, 4

46 U.S.C. § 31301-31343 ................................................................................................3

46 U.S.C. §§ 31341-42 ....................................................................................................3

46 U.S.C. § 302302......................................................................................................2, 3

46 U.S.C. § 688 et seq......................................................................................................3

46 U.S.C. app. §§ 181-196 ..............................................................................................3

33 U.S.C. § 901, et seq. ..............................................................................................2, 4

Defendants Liberty Helicopters, Inc. ("Liberty") and Meridian Consulting I Corporation, Inc. ("Meridian") respectfully submit this reply brief in further support of their motion to dismiss Plaintiffs' admiralty and maritime[1] claims as alleged in the Second Amended Complaint in Counts IV through VI for failure to state claims upon which relief may be based.

## I.

## PRELIMINARY STATEMENT

All Plaintiffs' maritime claims should be dismissed with prejudice, as they have not cited a single case wherein maritime jurisdiction has been conferred in an aviation accident case. Indeed, the main thrust of Plaintiffs' Opposition appears to be that the definition of maritime activities includes aircraft flying over navigable waterways. The fallacy of Plaintiffs' Opposition is that an aircraft is not a watercraft and aviation activities are not maritime activities.

Furthermore, Plaintiffs' Opposition does not faithfully recite the law. In the aftermath of the Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. 249 (1972) decision, it is clear that maritime jurisdiction is not conferred in aviation accidents simply because they occur over water, unless Congress has so legislated; otherwise, the mere occurrence of an aviation accident over a navigable waterway would confer this type of jurisdiction in every case of this type.

Here, the concerns underlying maritime jurisdiction have not been raised because the claims at issue arise from the mid-air collision of two aircraft, fortuitously which occurred by happenstance over the Hudson River, crashing partially over land and water in New Jersey. Simply stated, this accident bears no relation to traditional maritime activities, such that Plaintiffs' maritime claims are insufficiently "salty" to support this type of jurisdiction. See, e.g., Atlantic Mut. Ins. Cp v. Balfour Maclaine Int'l. Ltd., 968 F.2d 196, 200 (2d Cir. 1992)

---

[1] For the sake of clarity, the terms "maritime" and "admiralty" are currently used interchangeably. See, e.g., Ohntrup v. Gallagher, 03-cv-4891, 2006 U.S. Dist. LEXIS 70566, n.3 (D.N.J. Sept. 27, 2006).

(finding no maritime jurisdiction where claims were too "attenuated from the business of maritime commerce") and Slavchev v. Royal Caribbean Cruises, Ltd., 559 F.3d 251, 255 (4th Cir. 2009) (finding that a seaman's land-based contract, purportedly entered into after plaintiff's maritime service had been completed and separate from Royal Caribbean's traditional maritime duties, was not sufficiently "salty" to support maritime jurisdiction.)[2]

Equally significant is the fact that in the past, where Congress has sought to convey maritime jurisdiction to torts which are unconnected to traditional maritime activities, it has specifically done so. See, e.g., Death on the High Seas Act ("DOHSA") 46 U.S.C. § 302302 and the Longshore and Harbor Worker's Compensation Act ("LHWCA," 33 U.S.C. § 901, et seq.). Notably, in cases where there is a commercial aviation accident that occurs more than three nautical miles from land, Congress established maritime jurisdiction under DOHSA with an amendment known as the "Commercial Aviation Exception," which allows recovery of loss of society damages in actions arising from a "commercial aviation accident." 46 U.S.C. §30307. Thus, if Congress intended to convey maritime jurisdiction to any and all aviation accidents which fortuitously crash in part upon navigable waters, as has occurred in this case, it could have and would have legislated so.

---

[2] Alternatively, see Ohntrup, 2006 U.S. Dist. LEXIS 70566, *13 (finding "genuinely salty flavor" in an action for reimbursement and loss of business based upon an underlying property damage sustained by the fishing vessel when it was involved in an allision with a submerged object).

II.

## A. MARITIME JURISDICTION DOES NOT EXIST OVER ANY TORT OCCURRING OVER NAVIGABLE WATERS - AND WHERE CONGRESS SEEKS TO CONVEY JURISDICTION IT LEGISLATES SO

Liberty and Meridian submit that Congress has had ample opportunity to convey maritime jurisdiction over domestic aviation disasters crashing in inland waterways, and has declined to do so. Maritime jurisdiction over torts, unless conveyed by act of Congress, is reserved for cases bearing significant relationships to traditional maritime activities that are predominately connected to vessels. See e.g, Sisson v. Ruby, 497 U.S. 358 (1990) (conveying maritime jurisdiction in a case where a fire on a vessel occurred when the vessel was docked at sea) and Foremost Ins. Co. Richardson, 457 U.S. 668 (1982) (finding maritime jurisdiction in a case where two watercraft vessels -- not aircraft -- collided, but were not engaged in commercial activity). By further way of example, maritime liens and preferred ship mortgages attach only "vessels," and limitation of liability is available only to the owner or demise charterer of a "vessel." See, e.g., the Maritime Lien Act (recodified in 46 U.S.C. §§ 31341-42, the Ship Mortgage Act (recodified in 46 U.S.C. § 31301-31343) and the Limitation of Liability Act, 46 U.S.C. app. §§ 181-196. An injured employee may qualify as a seaman, with the benefits of maintenance and cure, the Jones Act and the warranty of seaworthiness, only if his employment has the requisite connection with a "vessel." See generally the Jones Act, 46 U.S.C. § 688 et seq.

Congress has carved out specific instances in which it has conferred maritime jurisdiction to torts that are more loosely connected to the maritime realm. For example, in passing DOHSA, now codified as 46 U.S.C. § 302302, in 1920, Congress explicitly extended federal maritime power to torts occurring on the high seas, beyond three marine leagues or three nautical miles of shore, and causing death. In fact, DOHSA is one of the very few instances where Congress has

addressed the issue of maritime tort jurisdiction. Similarly, in the 1927 passing of the LHWCA, 33 U.S.C. § 901, et seq., Congress sought to provide coverage for individuals in the maritime field, who were not connected to a vessel and uncovered by the Jones Act, in which they were permitted to recover for injuries occurring while operating as longshoremen and harbor workers.

Notably, in 2000 Congress revisited DOHSA's purpose, delineating a Commercial Aviation Exception to the statute which allows recovery of loss of society damages in actions arising from a "commercial aviation accident." 46 U.S.C. § 30307; see also In re Air Crash Disaster Near Peggy's Cove, Nova Scotia on Sept. 2, 1998, 210 F. Supp. 2d 570, 583 n.12 (E.D. Pa 2002) (in which the court notes that the House Resolution for which this report was submitted, to eliminate DOHSA's application to aviation incidents entirely, was ultimately rejected).

The legislative history of this amendment shows that Congress enacted the Commercial Aviation Exception in the aftermath of a number of international air disasters and the lawsuits arising out of such air disasters, in which the families of the victims were denied loss of society damages under the DOHSA. See Eberli v. Cirrus Design Corp., 15 F. Supp. 2d 1369, 1373-1374 (S.D. Tex 2000) (quoting 105 H.R.Rep. 201, at 2). Recognizing the unfairness of allowing or denying the families of airlines passengers non-pecuniary damages solely on the basis of where the crash occurred, Congress acted to "ensure that all families would be treated the same regardless of where a plane happened to crash." Id. Congress expressed concerns that if it made DOHSA inapplicable to commercial airlines accidents on the high seas, courts would be left with "a dizzying array of State, Federal, foreign, or perhaps, no law about which lawyers can fight endlessly, further postponing recovery." 146 Cong. Rec. S 1247 (daily ed. March 8, 2000) (statement of Sen. Gorton).

It is clear from the 1997 House Report on the "Nonapplicability of Death on the High Seas Act to Aviation Accidents" and from a subsequent House Report entitled "To Clarify the Application of the Act Popularly Known as the 'Death on the High Seas Act' to Aviation Incidents" that Congress's focus was on the families of commercial airline passengers: "In the Committee's view, the reported bill will help to ensure that families of airline accident victims will receive fair treatment under the law." 105 H.R. Rep. No. 201, at 3 (1997); 105 H.R. Rep. No. 201, at 2 (1999). And to further drive home the point, Congress made the Commercial Aviation Exception retroactive as to July 16, 1996, the day before TWA Flight 800 exploded and crashed into the waters off Long Island, New York. See Wendell H. Ford Aviation Investment and Report Act for the 21st Century, 106 PL 181, 114 Stat. 61 (codified as amended in scattered section of 49 U.S.C.), cited in In re Air Crash Near Nantucket Island, Mass. on Oct. 31 1999, Nos. 00-MD-1344, 01-CV-173, 01-CV-174, 01-CV-176 FB ASC, 2002 WL 32302598, at 1 (E.D.N.Y. May 23, 2002); Peggy's Cove, 210 F. Supp. 2d at 573-74.

Indeed, the sole focus of this 2000 Congressional hearing was fair treatment for families of passengers killed in air crashes on the high seas. See 105 H.R. Rep. No. 201, at 3 (1997). Liberty and Meridian respectfully submit that the Supreme Court's holding in Executive Jet Aviation, supra, dispensing with the locality alone test for conveying maritime jurisdiction to domestic air crash cases, is entirely consistent with Congress' intent not to extend maritime jurisdiction to aviation accidents unless the accident occurred beyond three maritime leagues from shore. Had Congress intended to extend maritime jurisdiction to any aviation incident that by chance occurred over navigable waters, and with such tenuous connections to the maritime realm as the incident giving rise to the actions before this Court, it would have clearly done so by statute as it did with DOHSA.

6308323-1

5

### B. THIS CASE BEARS NO CONNECTIONS TO TRADITIONAL MARITIME ACTIVITIES

Notably, the three most prominently cited Supreme Court decisions in the Plaintiffs' Opposition: (1) Grubart v. Great Lakes Dredge & Deck Co.., 513 U.S. 527 (1995); (2) Foremost; and (3) Sisson -- to purportedly illustrate a "maritime nexus" with respect to the aviation case at bar -- concern maritime torts involving watercraft vessels while either docked or traveling on navigable water and not aircraft flying over such waterways. In Grubart, a dredging vessel damaged a freight tunnel under the Chicago River, and the court found maritime jurisdiction. See Grubart, 513 U.S. at 529. Foremost dealt with tort claims arising out of the collision of two pleasure boats in a navigable river estuary. See Foremost, 457 U.S. 668 (1982). There, the Court again found maritime jurisdiction. In the most recent case, Sisson, the Supreme Court also found maritime jurisdiction over tort claims arising from a fire aboard a pleasure boat which caused damage to the boat, neighboring boats and the marina. See, Sisson, 497 U.S. at 367.

Because in this case there is no applicable maritime federal statute, the connection to maritime activity test raises the issue of whether (1) the general features of the type of incident has a potentially disruptive impact on maritime commerce, and whether (2) the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity. See Grubart, Inc., 513 U.S. at 534. Here, there is no connection to maritime activity with respect to two accident aircraft involved in this litigation, because merely flying aircraft over water is not closely related to activity traditionally subject to maritime law.

It is well-found that in examining an incident's nexus to maritime commerce for the purposes of maritime jurisdiction, "a court must look not only to the specific impact that the particular incident had on such commerce, but to the potential impact of the incident by examining its general character." Calhoun v. Yamaha Motor Co., 216 F.3d 338, 345 (3d Cir.

2000), citing Sisson, 497 U.S. at 363. Here, the general character of this incident in no way relates to maritime law: it involved a mid-air collision between two aircraft that were fortuitously over the Hudson River, with most tortious acts occurring over land.

Because aviation accidents over navigable waters are unanticipated, the necessity for maritime resources in emergency will always have a potentially disruptive impact on maritime commerce. If this factor is applied, all that would be required for maritime jurisdiction in aviation accidents occurring over navigable waters would be the pre-Executive Jet locality test. See James W. Huston and Bill O'Connor, Admiralty Law and Jurisdiction in Air Crash Cases, 69 J. Air L. & Com. 299, 304 (2004). It is respectfully submitted that this is not the law, as if evident from the Supreme Court's reasoning in reaching the Executive Jet decision, and sufficient "nexus" to traditional maritime activities is plainly absent here.

## CONCLUSION

Based upon the foregoing, it is respectfully submitted that because Counts IV, V and VI of Plaintiffs' Second Amended Complaint fail to state claims against Liberty and Meridian upon which relief may be granted, these Counts containing claims sounding in admiralty and maritime law should be dismissed in their entirety.

Respectfully submitted,

Dated: January 10, 2011  /s/ Peter Van Deventer, Jr.
      Newark, New Jersey  Peter Van Deventer, Jr.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
NEWARK DIVISION

CASE NO. 09-CV-06142-DMC-CCC

| | |
|---|---|
| *In Re Hudson River Mid-Air Collision on August 8, 2009* | *Consolidated for Discovery Purposed Only* |
| **FILED IN THE BELOW MATTER:**<br><br>**GINEVRA GALLAZZI**, Individually, and as Administrator ad Prosequendum of the Estate of **FABIO GALLAZZI**, Deceased, | **Consolidated Case** |
| **SILVIA RIGAMONTI NORELLI**, Individually, and as Administrator ad Prosequendum of the Estate of **FILIPPO NORELLI**, Deceased, | Formerly<br>09-CV-06143 - DMC-CCC |
| **GINERVA GALLAZZI**, Individually, and as Administrator ad Prosequendum of the Estate of **GIACOMO GALLAZZI**, Deceased, | Formerly<br>09-CV-06144-DMC-CCC |
| **SILVIA RIGAMONTI NORELLI**, Individually, and as Administrator ad Prosequendum of the Estate of **MICHELE NORELLI**, Deceased, | Formerly<br>09-CV-06145-DMC-CCC |
| **GINERVA GALLAZZI**, Individually, and as Administrator ad Prosequendum of the Estate of **TIZIANA PEDRONI**, Deceased,<br><br>    Plaintiffs,<br>vs.<br><br>**LIBERTY HELICOPTERS, INC.**, a New Jersey corporation; **MERIDIAN CONSULTING I CORPORATION, INC.**, a New Jersey Corporation; **PAMELA ALTMAN,** as Executor of the **ESTATE OF STEVEN M. ALTMAN**, a Pennsylvania Estate; **LCA PARTNERSHIP**, an alleged Pennsylvania Partnership, **LCA PARTNERSHIP**, an alleged Pennsylvania Partnership, **DAVID H. ALTMAN,** Individually, and as General Partner of **LCA PARTNERSHIP,** | Formerly<br>09-CV-06146-DMC-CCC |

6199709v1

| |
|---|
| DA AERO, INC., THE UNITED STATES OF AMERICA, ALTMAN MANAGEMENT, INC., a Delaware Corporation; and **ALTMAN MANAGEMENT COMPANY II, INC.**, a Delaware Corporation, |
| Defendants. |

**LIBERTY HELICOPTER, INC.'S AND MERIDIAN CONSULTING I CORPORATIONS, INC.'S REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS ADMIRALTY AND MARITIME CLAIMS ALLEGED IN SECOND AMENDED COMPLAINT**

## PROOF OF SERVICE

I, hereby certify that a copy of the foregoing Reply and this Certificate of Service was served by regular ECF Pacer notification and by e-mail on January 10, 2011 to the parties on the attached counsel list.

Dated: January 10, 2011
      Newark, New Jersey

/s/ Peter Van Deventer, Jr.
Peter Van Deventer, Jr.

6308323-1

## COUNSEL LIST

In Re Hudson River Mid-Air Collision on August 8, 2009
Civil Action No. Case No.: 09-cv-06142-DMC-JAD (Consolidated)
(FORMERLY Civil Action No. Case No. 09-CV-06142-DMC-JAD
Civil Action No. Case No. 10-CV-4433 DMC-JAD
Civil Action No. Case No. 10-CV-4434-DMC-JAD
Civil Action No. Case No. 10-CV-1334-DMC-JAD)

Our File No.: 32995.0506

---

Patricia A. Leid, Esq.
Thomas Thornton, Esq.
Thornton, Davis & Fein, P.A.
80 S.W. 8th St., Suite 2900
Miami, FL 33130
Ph:   305-446-2646 X202
Fax:  305-441-2374
leid@tdflaw.com
thornton@tdflaw.com
Attorneys for: The Estate of Steven
M. Altman and LCA Partnership


Daniel R. Lindemann, Esq.
Lindemann LLC
41 Vreeland Avenue
Totowa, NJ  07512
Attorneys for: The Estate of Steven M. Altman LCA Partnership
Tel:  (973) 256-1222
Fax:  (973) 256-4228
E-mail: drl@lindemann-law.com


Daniel Gibbons, AUSA
970 Broad Street, Suite 700
Newark, NJ 07102
Tel: (973) 645-2828
Fax: (973) 645-2702
Attorneys for: United States of America
Email:Daniel.gibbons@usdnj.gov


6308323-1

Steven J. Riegel, Sr. Trial Counsel
Barry F. Benson, Esq.
Matthew Mailloux, Esq
Senior Aviation Counsel
U.S. Dept of Justice
Civil Division, Tort Branch
P.O. Box 14271
Washington, DC 20044-4271
Tel: 202-616-4100
Fax: 202-616-4002
Email: steven.riegel@usdoj.gov
Attorneys for Third-Party Defendant,
United States of America


L. Richard Musat, Esq.
Treece Alfrey Musat & Bosworth, PC
Denver Place, South Tower
999 18th Street, Suite 1600
Denver, CO 80202
Attorneys for Defendants
Miridian Consulting I Corporation, Inc.
And Liberty Helicopter, Inc.
Tel: 303-292-2700
Fax: 303-295-0414
lrmusat@tamblaw.com


Robert J. Basil, Esq.
Collier & Basil, PC
1270 Broadway, Suite 305
New York, NY 10001
Local Attorneys for Plaintiffs,
Gallazzi and Norelli
Tel: 917-512-3066
Fax: 831-536-1075
robertjbasil@collierbasil.com



6308323-1

Michael F. Baumeister, Esq.
Dorothea M. Capone, Esq.
Douglas A. Latto, Esq.
Baumeister & Samuels, PC
One Exchange Plaza, 15th Fl.
New York, NY  10006
Attorneys for Plaintiff, Jaclyn Altman
Tel: 212-363-1200
Fax: 212-363-1346
dlatto@baumeisterlaw.com

David I. Katzman, Esq.
John D. McClune, Esq.
Patrick J. Gallagher, Esq.
Katzman, Lampert & McClune
100 W. Big Beaver Road, Suite 130
Troy, MI 48084
Attorneys for Plaintiff,
Pamela Altman, Individually and as
Executrix of the Estate of Steven M. Altman
Tel: 248-689-2270
Fax: 248-258-2825
jmcclune@klm-law.com

Mary Schiavo, Esq.
Motley Rice, LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC  29464
Attorneys for Plaintiffs
Gallazzi and Norelli
Tel:  843-216-9138
Fax: 843-216-9450
mschiavo@motleyrice.com

6308323-1

Gary Potters, Esq.
Michelle L. DeLuca, Esq.
Potters & Della Pietra LLP
100 Passaic Avenue
Fairfield, NJ  07004
Local Attorneys for Plaintiffs,
Pamela Altman, Individually and as
Executrix of the Estate of Steven M. Altman
Tel: 973-575-5240
Fax: 973-575-4468
gpotters@pdplawfirm.com

6308323-1