NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE HUDSON RIVER MID-AIR COLLISION ON AUGUST 8, 2009. | **Hon. Dennis M. Cavanaugh**<br><br>**OPINION**<br><br>Civ. No. 09-6142 (DMC) (JAD) |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon the motions of David Altman, DA Aero, Inc., LCA Partnership, Pamela Altman, as executrix of the Estate of Steven M. Altman, Altman Management, Inc., Altman Management Company II Inc., Liberty Helicopter Inc. ("Liberty") and Meridian Consulting I Corporation, Inc.'s ("Meridian"), (collectively "Defendants") motion to dismiss the admiralty and maritime claims alleged in the Second Amended Complaint ("SAC") for lack of subject matter jurisdiction. No oral argument was heard pursuant to Rule 78. For the reasons stated below, Defendants' motion to dismiss the admiralty and maritime claims is GRANTED.

**I. BACKGROUND**[1]

On the morning of August 8, 2009, a Piper N71MC ("Piper") and a Eurocopter N401LH ("Eurocopter") collided in the vicinity of Stevens Point in Hoboken, New Jersey, allegedly in part due to errors made by an air traffic controller. Both aircrafts plummeted into the Hudson River,

---

[1] The facts in the Background section have been taken from the parties' submissions.

killing the pilot and five passengers on board the Eurocopter, as well as the Piper's pilot and two passengers.

The Piper was destined for Ocean City, New Jersey and the pilot, Steven M. Altman made a last minute decision to take a "down-river" flight path along the Hudson River. The Eurocopter, operated by Defendant Liberty, departed the West 30th Street Heliport (JRA) in Manhattan for a sightseeing tour of New York City.

Plaintiffs, the representatives of the five deceased Eurocopter passengers, assert admiralty and maritime claims against Defendants Liberty and Meridian in Counts IV, V, and VI of the SAC, and against the remaining Defendants in Counts X, XI, and XII. Defendants all contend that admiralty jurisdiction and the application of maritime common law is not appropriate in this action because "all contacts with the Hudson River are merely fortuitous [] and . . . the crash bears no relationship to traditional maritime activities." Liberty Br. 6; LCA Reply Br. 4.[2]

## II. DISCUSSION

"[A] party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity." Grubart v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534 (1995). The location test is satisfied if the tort occurred over navigable water. Id. The connection test requires a court to "assess the

---

[2]The Court will refer to the Memorandum of Law in Support of Liberty Helicopters, Inc.'s and Meridian Consulting I Corporation, Inc.'s Motion to Dismiss Admiralty and Maritime Claims Alleged in Second Amended Complaint as "Liberty Br." "LCA Reply Br." refers to the Defedants LCA Partnership, et al.'s Brief in Reply to Gallazzi Plaintiff's Response to Altman Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and/or Failure to State a Cause of Action.

general features of the type of incident involved to determine whether the incident has a potentially disruptive impact on maritime commerce [and then] determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." Id. (citation and internal quotation marks omitted).

The parties do not dispute that the location test is readily satisfied in this case as the airplane and helicopter crashed over the Hudson River and landed in navigable waters. Thus, the only remaining issue is whether the activity of taking a helicopter tour over the Hudson River has a substantial relationship to traditional maritime activity.[3] In Executive Jet Aviation v. City of Cleveland, the Supreme Court recognized the narrow application of admiralty jurisdiction to aviation catastrophes:

> Although dangers of wind and wave faced by a plane that has crashed on navigable waters may be superficially similar to those encountered by a sinking ship, the plane's unexpected descent will almost invariably have been attributable to a cause unrelated to the sea – be it pilot error, defective design or manufacture of airframe or engine, error of a traffic controller at an airport, or some other cause; and the determination of liability will thus be based on factual and conceptual inquiries unfamiliar to the law of admiralty. It is clear, therefore, that neither the fact that a plane goes down on navigable waters nor the fact that the negligence 'occurs' while a plane is flying over such waters is enough to create such a relationship to traditional maritime activity as to justify the invocation of admiralty jurisdiction."

409 U.S. 249, 270-71 (1972). This Court shares many of these same reservations. This case will

---

[3] At least one court has noted that "most courts that have found admiralty jurisdiction for aviation disasters have not addressed the issue" of whether the incident has a potentially disruptive effect upon maritime commerce. In re: Air Crash at Belle Harbor, No. MDL 1448(RWS), 2006 WL 1288298, at *9 (S.D.N.Y. May 9, 2006). While this Court recognizes that nearly all crashes of an aircraft in navigable waters will have a potential impact upon maritime commerce, this issue need not be addressed because the Court finds that the second element of the connection test has not been satisfied.

ultimately be about whether there were errors made by the air traffic controller, and the Piper and Eurocopter pilots, not about issues within "admiralty's area of particular competence [such as] maritime liens, the general average, captures and prizes, limitation of liability, cargo damage, and claims for salvage." Id. at 270.

Moreover, this case does not concern activity traditionally performed by waterborne vessels. While there is a strong case for arguing that a trans-Atlantic flight or a flight to an otherwise unreachable island share a substantial relationship with maritime activity, because but for air travel those voyages would be made by a ship, that same argument can hardly be made about a sightseeing tour of the New York City waterways. See, e.g., Executive Jet, 409 U.S. at 271 (noting that there would be admiralty jurisdiction if a plane flying from New York to London crashed in the mid-Atlantic); In re: Air Crash at Belle Harbor, No. MDL 1448(RWS), 2006 WL 1288298, at *9 (S.D.N.Y. May 9, 2006) ("Federal courts have concluded unanimously that transoceanic or island voyages that, but for air travel, would have been conducted by sea have a significant relationship to maritime activity."). Though Plaintiffs try to make much of the fact that the decedents were taking a tour of the Hudson river, and note that there are many more boat tours of the river than there are helicopter tours, this argument is unpersuasive. See City of New York v. Waterfront Airways, Inc., 620 F. Supp. 411, 415 (S.D.N.Y. 1985) (dismissing admiralty claims for lack of subject matter jurisdiction where floatplane operating as air taxi between New Jersey and Wall Street crashed into East River because water and air travel are not exclusive means of access between New York and New Jersey). There are many ways to sightsee around the Hudson River, whether it by foot, by vehicle, by boat, or by air. Therefore, the Court finds that there is an insufficient connection with traditional maritime activity to permit the admiralty and maritime claims in the SAC to proceed

against any of the Defendants.

## IV.  CONCLUSION

For the reasons stated, Defendants' motion to dismiss the admiralty and maritime claims is GRANTED.

                                              S/ Dennis M. Cavanaugh
                                              Dennis M. Cavanaugh, U.S.D.J.

Date:        June  17 , 2010
Orig.:       Clerk
cc:         All Counsel of Record
              Hon. Joseph A. Dickson, U.S.M.J.
              File