NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | **Hon. Dennis M. Cavanaugh** |
| | : | |
| | : | |
| | : | **OPINION** |
| In re Hudson River Mid-Air Collision on August 8, 2009 | : | |
| | : | Civil Action No. 09-06142 (DMC)(JAD) |
| | : | |
| | : | |
| | : | |
| | : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon Defendants' LCA Partnership, DA Aero Inc., and David Altman (collectively "LCA Defendants") Motion for Summary Judgment (ECF No. 167) pursuant to FED. R. CIV. P.56(c).  Pursuant to FED. R. CIV. P. 78, no oral argument was heard.  After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Defendants' Motion for Summary Judgment is **granted** in part and **denied** in part.

I.    **BACKGROUND**[1]

This case arises out of the midair collision that occurred on August 8, 2009 over the Hudson River near Hoboken, New Jersey.  The collision occurred between a Liberty Eurocopter and a Piper aircraft which was owned and leased by the Defendants to the instant suit.  At the time of the crash, Steven Altman ("Steven Altman" or "Steven"), lessee and son of owner David Altman, was piloting

---

[1] The facts set-forth in this Opinion are taken from the Parties' statements in their respective moving papers.

the plane.  Several individuals were killed in the crash including Steven Altman himself and two passengers of the Piper aircraft, as well as a commercial pilot and five passengers aboard the Eurocopter.

The subject aircraft was first purchased by Michael Chiodo in 1976.  Chiodo subsequently sold the aircraft and repurchased it in 1991 as a newly formed partnership with Jim Land entitled "Land, Chiodo, and Aircraft" ("LCA").[2]

In 1996, Defendant David Altman purchased LCA and became its sole partner and owner of the aircraft. DA Aero, Inc. ("DA Aero, Inc.") was subsequently formed to serve as a general partner in LCA, with David Altman as its sole shareholder.  LCA was thereafter comprised of David Altman, individually, and DA Aero, Inc.

On June 26, 2011, LCA entered into a lease agreement (the "Lease Agreement" or the "Agreement") with Steven Altman and Stephen Vineberg ("Vineberg")(collectively the "Pilots") for the exclusive use of the Piper aircraft owned by LCA (the "Lease Agreement").[3]  The Agreement was executed by David Altman on behalf of LCA and by the two Pilots.  The Lease Agreement granted both Pilots the right to use the aircraft on an approximately equal basis.  In exchange, Vineberg paid $29,000 and provided the use of certain hangar space that he was permitted to rent.  In addition, both Pilots together paid an additional $1.00 of consideration.

Under the Agreement, the Pilots warranted that each was a licensed pilot and was qualified to operate the aircraft.  Further, the Pilots were solely responsible for the operation and maintenance

---

[2]The partnership was formed over a handshake with no formal paperwork.

[3]The Agreement provided that it was to be governed by and construed under the laws of the Commonwealth of Pennsylvania.

of the aircraft, as well as certain enumerated expenses including hangar rental, insurance, taxes, annual inspection costs, fuel and oil costs, and any costs related to engine/prop overhaul liability. The Agreement provided that such expenses were to be shared by the Pilots.[4]  In addition to the furnishment of the aircraft, LCA's only obligation under the Agreement was to provide and maintain all-risk aircraft insurance, and to name LCA as the owner and the Pilots as the loss payees and additional insureds.

The Agreement also included provisions upon termination which directed LCA to pay Vineberg the sum of $29,000 plus fifty percent of the excess, if any, of the then current market value of the aircraft above $70,000, adjusted by any amounts owned by the Pilots.  The Agreement also provided for the payment of any unreconciled payments of expenses upon termination of the Agreement.  Such provisions directed LCA to credit Vineberg for any amount owed by Altman to Vineberg, and for Vineberg to credit LCA for any amount owed by Vineberg to Altman.

The representatives of the estates of the deceased passengers in the Liberty Eurocopter (the "Gallazzi/Norelli Plaintiffs") filed lawsuits in federal district court in New Jersey on December 4, 2009.  Jaclyn Altman, as representative of the estates of Daniel Altman and Douglas Altman, the deceased passengers aboard the Piper aircraft, filed a lawsuit in federal district court in Pennsylvania, which was subsequently transferred to the District Court of New Jersey.  Roger Clarke, individually, and as a Personal Representative of the Estate of Jeremy Clarke, the deceased Pilot of the

---

[4]Day to day operational, fuel, oil, and similar costs were bourne by the person using the plane on the day such expenses were incurred.  Standard fixed expenses such as insurance, taxes, annual inspections, and required maintenance were shared equally.  Additional maintenance such as upgrades were paid as a percentage based on the number of hours each respective pilot used the plane.  Finally, any damage to the aircraft would be paid by the pilot who caused the damage.

Eurocopter, also sued.[5]  Among the named Defendants was LCA, the Pennsylvania corporation that owned the aircraft, as well as LCA's two partners, DA Aero Inc. and David Altman, individually (collectively the "LCA Defendants").  The motion for summary judgment before this Court concerns whether the owners of the leased aircraft may be held liable on the grounds of ownership of a dangerous instrumentality and negligent entrustment.

## II.   STANDARD OF REVIEW

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the non-moving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  The moving party bears the burden of showing either (1) there is no genuine issue of fact and it must prevail as a matter of law; or (2) that the non-moving party has not shown facts relating to an essential element of the issue for which he bears the burden. Celotex, 477 U.S. at 331.  If either showing is made, the burden shifts to the non-moving party, who must demonstrate facts that support each element for which he bears the burden, as well as the existence of genuine issues of material fact.  Id.  A material fact is one that might affect the outcome of the case, and a genuine dispute will be found if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

While a court must draw reasonable inferences in the light most favorable to the non-moving

---

[5]Defendants Liberty Helicopters, Inc. and Meridian Consulting I Corporation, Inc. also filed cross-claims against LCA.  There are also numerous subrogation claims filed against LCA.

party, see Penn. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995); Newsome v. Admin. Office of the Courts of the State of N.J., 103 F. Supp.2d 807, 815 (D.N.J. 2000), aff'd, 51 Fed. Appx. 76 (3d Cir. 2002) (citing Watts v. Univ. of Del., 622 F.2d 47, 50 (D.N.J. 1980)), the non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden. See FED. R. CIV. P. 56(e); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 586. Rather, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324. (internal quotations omitted) "[U]nsupported allegations in memorandum and pleadings are insufficient to repel summary judgment" see Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990), and, conclusory allegations are insufficient to establish genuine issues of fact. Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 902 (1990). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586.

## III. DISCUSSION

In support of their motion for summary judgment, Defendants argue that 49 U.S.C. § 44112 precludes Plaintiffs' claims, as it preempts any state law claims and precludes liability for an owner of an aircraft who was not in control of the aircraft at the time of the accident. Plaintiffs Galazzi contend that summary judgment is not appropriate, as material facts remain in dispute regarding both the applicability of § 44112 and the control exercised by Defendants over the aircraft at the time of

the collision.[6]

      A.      <u>49 U.S.C. § 44112</u>

49 U.S.C. § 44112 provides for a limitation on liability of the owner of an aircraft when personal injury, death, or property loss or damage attributable to the aircraft occurs when the aircraft is not under the owners control.  Specifically, § 44112 provides "[a] lessor, owner, or secured party is liable for personal injury, death, or property loss or damage on land or water only when a civil aircraft, aircraft engine, or propeller is in the actual possession or control of the lessor, owner, or secured party."  Therefore, for the owner of an aircraft to be held liable in the event of personal injury or death attributable to the aircraft, that owner must have been in actual possession or control of the aircraft at the time the injury was sustained. <u>Carey v. Dylan Aviation, LLC,</u> 2010 U.S. Dist. LEXIS 27834, at *5 (E.D.Pa. March 24, 2010).

The parties before this Court on this motion for summary judgment dispute the applicability of § 44112 to the instant dispute.  Defendants move for summary judgment on the grounds that § 44112 preempts any state law that provides for vicarious liability associated with the ownership of an aircraft.  Consequently, Defendants argue that § 44112 operates to preclude liability under the circumstances because Defendants did not exercise control over the aircraft at the time of the collision.  Plaintiffs challenge the applicability of § 44112 by calling into question both the Lease Agreement itself, as well as the relationship between the contracting parties.  First, Plaintiffs challenge that the Lease Agreement was not a lease at all but is rather an agreement of convenience

---

[6]None of the other Plaintiffs to the instant suit filed any opposition to Defendants' Motion for Summary Judgment.

set up to allow David Altman to avoid liability.  Second, Plaintiffs argue that Defendants did in fact exercise control over the aircraft at the time of the crash, and are therefore not entitled to the protections of § 44112.  Such control, it is argued, was exercised through the provisions in the lease directing the maintenance, insurance, and other obligations associated with the continued use of the aircraft, as well as the alleged agency of Steve Altman, the pilot on the day of the collision, on behalf of LCA.

In support of the proposition that the Agreement does not constitute a lease, Plaintiffs highlight various provisions in the Agreement which they maintain call into question the intent behind the arrangement.  Specifically, Plaintiffs take issue with the amount of consideration that was paid and the manner in which it was exchanged pursuant to the lease.  It is undisputed that the lease was executed upon exchange of the sum of $29,000 and the use of certain hangar space conferred by Vineberg, and $1.00 conferred by the Pilots collectively.  It is also undisputed that the Agreement provided that the consideration furnished by Vineberg would be returned to him in full upon termination.  Plaintiffs further point out that the Agreement did not require any further ongoing payments during the course of the lease.  Plaintiffs argue that these provisions evidence an intent to form an agreement that was not intended to fall within the protection of § 44112, and that its application is therefore inappropriate.

Further, Plaintiffs argue that regardless of the validity of the lease, the record shows that Defendants exercised control over the aircraft, both through the provisions of the Agreement itself and through Steven Altman, as LCA's alleged agent.

First, this Court rejects Plaintiffs' suggestion that Defendants exercised control over the

7

aircraft through the provisions of the Agreement.  Rather, such provisions evidence an intent to relinquish direct control over the operation and maintenance of the aircraft to the Pilots.  This conclusion is supported by the deposition testimony of Vineberg regarding the use, upkeep, and upgrades of the aircraft.  Such testimony demonstrates that all decisions made concerning the aircraft were made by the Pilots together, and there is no record evidence to suggest any involvement of David Altman in this process.  The fact that David Altman provided all-risk insurance coverage pursuant to the Agreement does not change the analysis, as it also does not evidence the exercise of concrete control over the aircraft that is required to preclude the application of § 44112.  See In re Inlow Accident Litig., 2001 U.S. Dist LEXIS 2747 at *57 (S.D.Ind. Feb. 7, 2001).

This Court does, however, agree with Plaintiffs that issues of material fact remain regarding Steven Altman's affiliation with LCA at the time of the crash.  In support of this position, Plaintiffs point to several references in the record.  First, Plaintiffs point to the deposition testimony of the plane's previous owner, Michael Chiodo.  During the course of Mr. Chiodo's deposition he first stated that he sold the aircraft to David Altman, but later stated that he sold the aircraft to "the Altmans."  Next, Plaintiffs rely on the deposition testimony of Vineberg, Steven's co-lessee. Vineberg testified that despite his belief that David Altman owned the aircraft, he believed that Steven was putting up the value of the aircraft in the arrangement between the Pilots.  Vineberg also testified that he believed Steven's father to be "covering" Steven for his contributions to the agreement.  Finally, Plaintiffs point to the provisions of the Lease Agreement which provide that upon termination of the Lease Agreement, all debts owed by Steven Altman to Vineberg were to be paid by LCA, and all debts owed by Vineberg to Steven Altman were to be paid to LCA.  Defendants

have not offered any explanation regarding the Agreement's substitution of LCA for Steven upon termination.  However, Vineberg did testify that he believed the unreconciled payments would be paid by Steven and that he never received a check from LCA.

This Court finds that, in light of the foregoing, there remain issues of material fact regarding Steven Altman's affiliation with LCA.  Accordingly, issues of fact remain regarding the degree of control that was exercised by LCA over the aircraft at the time of the collision.  Summary judgment is therefore inappropriate as to Plaintiffs' claims premised upon ownership of a dangerous instrumentality.

B.    Negligent Entrustment

Plaintiffs further advance claims of negligent entrustment against David Altman, LCA, and DA Aero for the entrustment of the aircraft to Steven Altman. While this case presents the competing interests of New Jersey and Pennsylvania, this Court concludes that a conflict of laws analysis is not necessary as Plaintiffs' claims would fail under either statute.  Both New Jersey and Pennsylvania consult the Second Restatement of Torts Section 308 to construe a cause of action of negligent entrustment. See Donegal Mut. Ins. Co. v. Fackler, 835 A.2d 712, 720 (Pa. Super. Ct. 2003);  See New Jersey Citizens United v. Hernandez, 2006 N.J. Super. Unpub. LEXIS 80, at *9 (Mar. 20,2006). § 308 defines negligent entrustment as

> "negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others."

Under both New Jersey and Pennsylvania law, a claim of negligent entrustment requires that the owner knew or should have known that the person to which the thing was entrusted was likely to act

9

in such a way as to create an unreasonable risk of harm to others. See Quigley 2011 U.S. Dist. LEXIS 130178, at *5 (D.N.J. Nov. 9, 2011) (construing negligent entrustment under New Jersey law); Gaines v. Krawczyk, 354 F.Supp.2d 573, 579 (W.D.Pa. 2004)(construing negligent entrustment under Pennsylvania law).

There is no evidence in the record which would tend to show that David Altman knew or should have known that Steven Altman was likely to act negligently in his use of the aircraft.  In fact, the record testimony of Steven Altman's co-lessee Vineberg, who testified to flying with Steven on several occasions, opined that to the best of his knowledge Steven was a skilled pilot who stayed current with all systems training and was conscientious in his approach to flying.  The record evidences no reason, and Defendants point to no evidence to suggest any apparent negligent propensities of Steven Altman, that would suggest that David Altman should have concluded otherwise.  Therefore, regardless of whether § 44112 operates to preclude Plaintiffs' claims against the LCA Defendants, Plaintiffs would not be able to demonstrate a critical element to establish a claim of negligent entrustment.  Accordingly, summary judgment of Plaintiffs' negligent entrustment claims must be granted.

## IV.   CONCLUSION

For the reasons stated, it is the finding of this Court that Defendants' motion for Summary Judgment is **granted** with respect to Plaintiffs' Negligent Entrustment claims and **denied** with respect to Defendants' ownership liability.  An appropriate Order accompanies this Opinion.

S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:          February   28  , 2012
Orig.:         Clerk
cc:            Hon. Joseph A. Dickson, U.S.M.J.
               All Counsel of Record
               File